UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RECEIVED

FEB 19 2004

CIVIL ACTION
NO.

| | |
|---|---|
| Gerard D. Grandoit, Employee, Plaintiff, | ) ) ) |
| v. | ) ) COMPLAINT |
| Benjamin J. Gilson and another [1] Examiner, Defendant (s) | ) ) ) |

## **INTRODUCTION**

The Plaintiff, Gerard D. Grandoit, was working at GTE Corporation as a contract engineering technician for Technical Aid Corporation, ("Tech Aid") and fell down from a highly defective bench chair which collapsed on March 23, 1990 where he sustained an injury to his cervical and lumbar spine after lending to the boxes filled of boards on the floor. He received treatments, medications, injections, traction by the requested of his treating doctors whom found that he was unable to return back to work due to the findings from the scientific tests done at the time. The defendant did not seem to like him from the beginning where he used a lit bit of force during his 1st examination but the plaintiff does not seem to remember every detail of it by now. He mentioned this fact to his treating doctor at the time which was registered by his treating doctor on the record. Liberty Mutual Insurance Company, (" LMIC ") paid benefits for a while and requested for him to be examined by its examiner, an orthopedic surgery, Dr. Benjamin J. Gilson, the defendant here, as it, at the office

---

[1] Another, Independent Medical Examiner, Ime, Inc., now under the name of Concentra Medical Examiner, CME

of Independent Medical Examination ( " Ime, Inc.") which now changes its name to Concentra Medical Exam ("CME"). The LMIC filed a discontinuance of benefits where his claim came before a conference judge whom accepted the claim due to the plaintiff's medical condition. He was not able to calculate the single Average Weekly Wage ("AWW") under the M.G.L.c.152 section 1 at the Department of Industrial Accidents ("DIA"). He discontinued weekly wage due to a false information provided by the second, ( " 2nd ") employer, Cooperative for Human Services, (" CFHS ") stating that the plaintiff was fired on March 18, 1990, a week before the accident.

The case came back to a hearing de novo before a different member at the DIA whom adopted the reports by the defendant to find that the plaintiff was disabled. The single member also found that the defendant was a credible doctor over all medical evidences on the record. The plaintiff appealed the decision to reopen his record due to a newly discovered evidence which was not available at the time of the hearing. The defendant sent a Fax Request constructed with its own logo of Fax Request stating that the neck was not relating to the accident on March 23, 1990 when the plaintiff brought the accident report along with the report from his treating doctors to the defendant's office at the time of his examination but facts prove that the defendant was not a credible, medical, honest doctor on the record. Its action deliberately caused the plaintiff to lose his constitutional right at the DIA where he has been fighting since then to prove that his neck injury was relating to the industrial accident on March 23, 1990 before any subsequent injury in his life.

The plaintiff brings this action to this court against the defendant, Independent Medical Examiner, Doctor Benjamin Gilson, an orthopedic surgery, who was hired by Liberty Mutual Insurance Company, to examine him. His act of deception caused harm to him in convincing the single member not to reopen the record. The defendant was dishonestly, intentionally, maliciously,

2

knowingly, willfully, illegally, deliberately, unlawfully provided a false statement in a fax, contrary to the accident report, to prevent him from receiving his constitutional right at the DIA.

This complaint is challenging the willful misconduct, reports, depositions, notes, fax requests by the defendant for a fair justification on the merits contained thereof. The accident report signed by a supervisor from the employer stating neck and back injuries but the defendant removed the cervical spine from the accident report due to whatever reason that it may be. He stated in the Fax Request constructed from its office that the plaintiff was only hurting his head and back on March 23, 1990 just because the plaintiff went on the same day at Mount Auburn Hospital where X-rays reveal Kyphosis on the cervical spine. He heard that the plaintiff's claim might be reopened with the evidence of social security, the result of the X-rays along with other reports. He sent a fax request in absence of the plaintiff to the DIA to stop him from reopening his claim.

The plaintiff redirects this action to recover on the benefits owed to him due to the truth on the accident report, MRI, other issues, blood test results, contrary to the finding from the defendant causing his claim to discontinue at the DIA. The act done did damage his claim by making it to rise on benefits without settlement due to the wrongdoing by the defendant acting as a judge maliciously deliberate more than one reports with different signatures to stop him from receiving his constitutional right at the DIA. The Fax Request is the true meaning of action done by the defendant to eliminate him on injustice. It was God, his spirit, holly ghost, soul, the father, the son and the holly spirit who save him from going away in a solitary hole. The defendant stated in this report that the plaintiff gave positive Waddell when its office was purportedly signed a document stating that the his neck injury was not relating to the accident at work on March 23, 1990. The plaintiff thanks God and prays this court honor to let his administrative remedies of resting into the legislative act on cue

3

process of law for each party intentionally deliberating a wrong fact to destroy his credibility as here the defendant deceiving and misleading the whole DIA in a piece of paper to benefit itself.

## **PARTIES**

1. The plaintiff, Gerard D. Grandoit, is a resident of Cambridge, Massachusetts, United States and citizen of the United States who lives now at 2 Cedar Square, Apt. 1, Cambridge, Massachusetts in the Middlesex County of Cambridge.

2. The plaintiff, in the name of the father, in of the son, in of the holly ghost, Amen is a spiritual delegation who lives inside of life, located at 2 Cedar Square, Apt. 1, Cambridge, Massachusetts in the Middlesex County of Cambridge.

3. The plaintiff, soul, spirit, inspirit is a spiritual delegation who lives inside of life, located at 2 Cedar Square, Apt. 1, Cambridge, Massachusetts in the Middlesex County of Cambridge.

4. The plaintiff, holly spirit, is a spiritual delegation who lives inside of life, located at 2 Cedar Square, Apt. 1, Cambridge, Massachusetts in the Middlesex County of Cambridge.

5. The plaintiff represents by Prose, Gerard D. Grandoit, in this proceedings located now at 2 Cedar square, apartment 1, Cambridge, Massachusetts  02140.

6. The defendant, Benjamin J. Gilson, was registered under the name of Independent Medical Examination, (" Ime, Inc." ) locating early at 500 Commings Park, suite 400, Woburn, Massachusetts 01801 and registered now under the name of business, Concentra Medical Exam, (" CME ") located now at 130 Second Ave, Waltham, Massachusetts 02451.

7. The defendant, Benjamin J. Gilson, located at 18 Chestnut St., Newport, Rode Island 02140.

## FACTS

8.      The plaintiff was working for Technical Aid Corporation which had a contract made with General Telephone Electronics, Inc., Government Systems Corporation located at 77A Street, in Needham, Massachusetts for him to perform an electronic duty as an engineering technician. He fell down from a highly defective bench chair on March 23, 1990 where he hurts his lower back, neck and head. He was also holding a weekend manager job at Cooperative For Human Services, (" CFHS ") and considered as an employee for Cayman Systems Incorporated at the time of the accident on March 23, 1990. He went to Mount Auburn Hospital on the same day where he had X-rays done on the cervical and lumbar spines. The X-ray from the cervical spine reveals Kyphosis on the cervical spine. He was advised him to consult a doctor specializing in the orthopedic for the back.

9.      Liberty Mutual Insurance Company paid compensation benefits to him at the rate of Technical Aid corporation. He did not receive the correct rate from the three employers that he worked at the time of the accident. He requested for the adjustment of the weekly pays from LMIC whom filed a discontinuance of benefits which brought his claim at the DIA. A conference Judge accepted his claim due to his medical condition and discontinued weekly benefits due to a report from the 2nd employer stating that he was fired a week before the date of the accident. He requested for him to bring the correct information on the second employer for the correct single Average Weekly Wake ("AWW ") at the next court date.

10.     On July 17, 1990, the defendant examined the back and did not examine the cervical spine where the plaintiff brought the information to him about the accident. He also filed paper at the defendant's office stating neck and back injuries as well as mentioned the result from the hospital on the same day of the accident to the defendant.

11.  On December 6, 1991, the plaintiff timely appealed the Order which came before another administrative judge for a pre-conference hearing whom requested the Insurer and the plaintiff to reach a Lump Sum Settlement of Agreement but the LMIC was retaliating due to the report from the defendant's office along with one from the second ("2nd ") employer.

12.  On April 14, 1992, the defendant examined the cervical spine and lumbar spines but he was not opined to the cervical spine on his conclusion just because the result of the X-ray.

13.  On September 1, 1992, the defendant went into a deposition where he was expressing his concerns and bout his reports and opinions. He testified about the plaintiff's injuries and later its office sent an incorrect statement to the DIA contrary to his early opinions and testimony. The form signed by the defendant's signature on it to destroy the plaintiff from receiving his constitutional right and benefits at the DIA.

14.  On November 13, 1992, the plaintiff's claim returned back for a hearing de novo before another conference Judge whom heard the plaintiff at the DIA in boston on the issues relating to his worker compensation case. He presented his medical evidences where the judge adopted the medical reports of the defendant on the issues contained therein stating that the defendant was a credible doctor on the fact findings on his reports.

15.  On March 2, 1993, the plaintiff filed a motion to present additional medical and newly discovered evidences which were not available at the time of the hearing on November 13, 1993. He was granted to appear for an oral argument on the motion. The new evidence was from the Social Security Disability Benefits, the truth from the 2nd employer, the result from the X-ray making the defendant to ignore of examining the cervical spine along with the result from the MRI contrary to the defendant's deposition.

16.  At some relevant times, the defendant heard and realized that he might receive justice that

there was a new evidence to reopen the record. The plaintiff does not know as to whether the defendant was the one requesting the Fax Request or the DIA sent the request to the defendant's office, probably, for giving his opinion on the reason that he was not opined to the cervical spine in his report which was part of the accident. The defendant instructed the DIA with a judgement in its own Fax Request that the neck was not related to the accident on March 23, 1990 where liability should be accepted for the back only. He sent this report behind the plaintiff when he supposes to have a copy of this record due to the findings on the X-ray. The Fax Request made by his office. He told the court that liability should be accepted to a certain period of times for the back only and court should not pay liability benefits for the cervical spine. The defendant, its office, was hiring by LMIC to examine the plaintiff but he acted as a judge, juror, mediator, an investigator, and even a prosecutor in deliberating justice to put the plaintiff's claim in a solitary hole.

17.    The plaintiff went to see the defendant for a medical orthopedic examination on July 17, 1990 and April 14, 1992 for LMIC. The defendant only performed the orthopedic examination by avoiding the medical examination. There was no vital sign taking for example; no medical examination was taking such as urine tests and other tests. He roughly examined the plaintiff with a little bit of force during his examination where this fact was mentioned at the time by the plaintiff to his treating doctor and still on the record. The defendant testifies under oath that the plaintiff was his patient when the plaintiff was a customer at his office ignoring the definition of patient in his reports.

18.    The plaintiff has been frustrating, upsetting, suffering from anxiety, depression and struggling to make it with low self-esteem after discovering that the defendant willfully violated the Fair Labor Standard Act ("FLSA") pursuant to 29 U.S.C. § 201 et seq. In failing

to examine his cervical spine and did not opine to this effect in his report where these violations had caused harm to his claim and he is the one paying the consequences of it.

19. The defendant predicted that the MRI would not reveal any finding in one day away from his examination when the MRI revealed contrary to his prediction. He stated under oath that there was no orthopedic finding result on the MRI where the result is contrary to his story under oath. He gave a lot of inconsistent opinions to prevent the plaintiff from receiving his compensation benefits at the DIA. He misled facts from the plaintiff's treating doctor report to benefit himself for whatever reason that it may be. He deceived and misled the whole DIA by making the single member to believe an erroneous opinion that he was a credible doctor and the plaintiff was not disabled at the time of his examination when his finding was not true. He was acting as an investigator by showing in one of his report that the accident was in question when his role was to examine the plaintiff for a report. The content from his reports say the rests like the one from the Fax Request forged in stating that the neck was not relating to the accident on Mach 23, 1990.

20. On February 22, 1994, the single member did not accept to reopen the record due to the information receiving from the defendant whom was not fair nor honest on the record. The accident occurred on March 23, 1990 stating back and neck injuries. The plaintiff went to see the defendant on July 17, 1990 without having any major problem nor doing anything wrongly between these dates. His medical and physical conditions were stable before the defendant's examination on July 17, 1990. He can not really state that the examination was aggravating his condition since he was an expert in the cervical field. He leaves this issue before this court on the mis-diagnosed result of X-ray providing by the plaintiff which established a cause of action outside of the worker compensation Act destroying the plaintiff

but he has been experiencing different symptoms as day by days in his back problem.

21. On December 6, 1996, the plaintiff filed again at the DIA but he could not participate in the Massachusetts rehabilitation program at the time since he was not a worker compensation recipient due to the report from the defendant causing his claim to discontinue at the DIA.

22. On or about July 14, 1997, a conference judge held before another Administrative Judge, the 2nd hearing judge, whom issued a conference order on July 16, 1997 by denying his benefits.

23. On or about February 5, 1999, the 2nd hearing judge reached a decision in favor of the defendant due to psychological and early medical evidences on the record.

24. On January 7, 1998, the defendant examined the plaintiff again for the Liberty Mutual Insurance Company where he gave his own story which is his opinion. The Waddell sign was a way to convince the justice of convicting the plaintiff for his constitutional right. He examined the plaintiff and found that the plaintiff does not have any orthopedic concern as far as it concerns and still avoided to opined on the cervical spine.

25. The plaintiff appealed the 2nd hearing decision to the reviewing board at the DIA but the board did not have the authority to overturn the first reviewing board decision which was affirmed the decision basing on the false information providing by the defendant. The Appeals Court also did not have the authority to overturn the 1st reviewing board decision which was affirmed the decision basing on the false information providing by the defendant.

26. The plaintiff filed for Further Appellate Review at the Supreme Judicial Court whom affirmed the decision made by the reviewing boards at the DIA and Appeal Courts. It did not accept to reopen the decision made by the DIA nor the Appeals Courts in allowing the record for further appellate review. The falsifying evidence from the defendant's office caused him to lose his benefits at the DIA. He filed this claim here for retroactive on benefits losing due

to the defendant's willful, unlawful, prejudicial, illegal, dishonest, unfair conducts and actions against him at the DIA.

27. The plaintiff received spiritual treatment from the church of our lady of pity and our lady of perpetual during the denial period of his compensation. The plaintiff had to call a lady attorney to help him of filling his claim. He got confused a lot sometimes since the only one who do most of the duties to receive justice on injustice done to him.

## JURISDICTION AND VENUE

28. This Court has a jurisdiction over the subject of matter illustrating in sets forth above relating to workers compensation pursuant to 28 U.S.C. § 1445 on bad faith, breath of duty, discrimination, misconduct, torts, actions, miscellaneous injustices done, conduct, jurisdiction of state court in connection with the law under the Fair Labor Standards Act, (" FLSA ") 30 U.S.C.§ 901, et seq and other statutes at this court.

29. This case also falls under the application of ERISA, 29 U.S.C.§ 1132 along with the preemption issue under § 301 of the Labor Management Relation Act ("LMRA"), 29 U.S.C.§ 185; 28 U.C.S. § 1331 and 29 U.S.C. § 216 (b) and other applications related to his claim.

30. The defendant was hired to perform an orthopedic examination to the plaintiff for LMIC. It has its place of business in this district which subjects to personal matter jurisdiction. The venue is proper here pursuant 28 U.S.C.§ 1391 since the defendant had its business in this district and it is subject to personal jurisdiction pursuant to 28 U.S.C. § 1445 FELA.

31. The defendant improperly instructed the DIA to consider his ruling with a judgement in a Fax Request constructing from its previous office with the letter of Ime, Inc.,. It materially breached its contract of examination on being a judge in this case. The breach of the

obligation took place in this district; the defendant's business in this district and subjects to jurisdiction in this district.

32.    The defendant also participates in interstate commerce and resides in Rode Island.

## COUNT I
## PLAINTIFF'S ALLEGATIONS

33.    During the FLSA period, the job of the plaintiff at his employer before the accident and examination of the defendant characterizing against him was to :

   a.    carry a fixture to put it to a mainframe computer for testing different electronic boards which requires two people to put the fixture on the big machine.

   b.    follow the requirement provided by the site on the test needed to perform for such day in accord with the policies, guidelines and practice from the employer.

   c.    receive the data necessary from the site in accord with the employer's procedures, guidelines and practices

34.    Plaintiff worked 40 hours per week at the employer and got paid in hourly basis. He never lost a day of work from the time of hiring to work on the contractor site until the last day of employment, and rarely missing a day out of work unless it was an emergency.

35.    The plaintiff also hold a second job at the time of the accident to supervise one to three persons along with three clients in the weekend shift from Friday night to Monday morning. He had to provide a management and social responsibilities at the place by helping children who are unable to function properly for themselves. He worked a total of 48 hours in every weekend without missing a weekend out of work but one or more in rare circumstances.

36.    The plaintiff worked in a third employer, Cayman System, Inc., as a consultant technician

and considers as an employee at the time of the accident. His duty was to test and fix electronic boards at the request of the employer. He had to be honest after each performing and fixing the boards. He worked a total of 40 hours a week in the second shift without missing a day out of work but one or more in rare circumstances.

37.    The primary duty of the plaintiff at the first employer was to be honest in examining the board by giving an accurate result after the test performed from the computer according to the requirement from the contract signed at Technical Aid Corporation to work at GTE's site. This duty was to carry on before and during the defendant's examination.

38.    During the FLSA work period at his employer's site, a defective chair collapsed by causing him to fall and injure his cervical and lumbar spine which caused him to seek administrative remedies against the Liberty Mutual Insurance Company where the defendant's actions, reports, notes, depositions prevented him from receiving his constitutional right at the DIA.

39.    As a result of each issues raised above, the plaintiff was requesting to have a fair dealing on the employment holding to perform for his employer under 28 U.S.C. § 1445, breach of duty of good faith and fair dealing. He was acting under the common duty of good faith to his employer but the defendant was acting coercively under the common-law duty of bad faith and dealing in his claim.

## COUNT II
## FLSA CLASS ALLEGATIONS ON PARTIES INVOLVED

40.    The Plaintiff repeats and re-alleges paragraph 1 to 39 of this complaint, comprehensively, and incorporates them by a reference as fully set forth below :

41.    He was scheduled by Liberty Mutual Insurance Company to be examined by the defendant

in its office. His duties and activities were to respect the FLSA with full honesty to the defendant in any question asked. The defendant and its office did not follow the same requirement in their duties and activities as described above to the obligation owed.

42.    During the course of FLSA, the defendant received payment to examine him under the same standard of employment procedure and practice from the law of Massachusetts to perform an honest examination for a fair opinion in a report.

43.    The defendant's action demonstrates an unfair and a deceptive practice by the Mass. Gen. Laws ch. 93A in faxing a false fact to the DIA to make the single member of believing in a wrong opinion that the plaintiff was not disabled when the finding was not true at the time of his examination which was outrageous.

44.    The harm done caused the plaintiff to lose his credibility, demeanor, claims, benefits and other relevant aspects due to the wrong fact produced by the defendant at the DIA which constitutes a chapter 93A violation.

45.    The defendant stated under oath that he took 10 to 15 minutes in seeing the plaintiff on an examination which was supposed to take at least 45 minutes to an hour on the first time seeing. Its opinion was severely damaged the credibility and demeanor of the plaintiff by making the whole DIA to believe in this false speculation, interpretation, assumption due to his clear action against the plaintiff.

46.    During the FLSA period, The defendant made several inconsistencies in more than one occasions by repeating the same actions again and again against the plaintiff in sets forth herein for violation under the 29 U.S.C. § 207 (a).

47.    The defendant was purposely, willfully, intentionally, deliberately, prejudicially, maliciously dishonestly, repeating these acts under 29 U.S.C. § 207 (a) at the DIA to take an advantage

of the plaintiff on the record. Its action really caused a severe harms to the plaintiff's claim by convincing the single member to reach a decision against the plaintiff.

48.    The benefit of the doubt usually reaches to the truth, the MRI, which conformed to the quality of standards under scientific tests as set forth in 20 C.F.R. § 718.103. The defendant proposed that the MRI would not reveal any orthopedic finding where the MRI's result was contrary to his speculation. It still gave a contrary finding on the MRI's result of his report. The M.G.L.c.152, § 14 usually requires a party to be honest in a claim filing at the DIA or M.G.L.c.152, § 28 appears with its fairness on the line.

49.    The defendant performed his examination was on April 14, 1992 where the MRI, one day away before the result, was on April 15, 1992. The plaintiff told him that he was scheduled for an MRI on April 14, 1992. He did not wait to see the result of the MRI where he wrote his report against the result of the MRI which proves his clear indication against the plaintiff.

50.    In presenting the evidence on the record, section 727.203 (b) (4) calls for justice to stop this type of injustice like this example from repeating itself in the near future. The defendant severely damaged the plaintiff's credibility and demeanor by making the whole DIA to believe in a false interpretation on the record.

51.    The defendant, like the plaintiff, was subject to the same lawful policy under the FLSA to perform a consistent examination on a duty owed without acting bias nor prejudice but the defendant failed the provision under the law by showing his clear opinion visibly due to the result of his action, examination and writing against the plaintiff.

52.    The defendant faxed a letter, as a matter of fact, to the DIA to prevent the plaintiff from receiving his benefits. This deceptive practice describes under the Mass. Gen. Law 93A on violation of the statue from the Massachusetts Workers Compensation Act, section 14, as

a matter of law, that the plaintiff would have received justice, probably, due to the newly discovered evidence had the defendant was not faxing a false information to the DIA.

53.    During the rule 23, the defendant violated the Massachusetts Law by providing an untrue statement to the DIA behind the plaintiff in order to stop him from receiving his constitutional right when the purpose of his examination was only to provide an appropriate orthopedic examination for a fair report according to his ability, knowledge, and experience.

54.    As a result of this count, the plaintiff, his parties, claim his right on the issues which were voluntarily provided against him for the termination of his benefits at the DIA.

## COUNT III
## VIOLATION OF THE LAW

55.    The Plaintiff repeats and re-alleges paragraph 1 to 54 of this complaint, comprehensively, and incorporates them by a reference as fully set forth below :

56.    The defendant's conscience on opnion, as described in paragraphs above, and as more fully showing in the Fax Request response on the record from the examiner's office to the DIA, constituted an unfair, deceptive opinion under examination which declares an unfair justice by M.G.L.c.30A, section 14 (7) (a) (d) at the Appeals Court in connection with M.G.L.c.152, 14 at the DIA and 28 U.S.C.§ 1445, FELA in this court.

57.    The defendant deceived and misled the whole DIA direct and but acted unjustifiedly against the plaintiff in his report. It made the plaintiff to look like he was submitting a fraudulent claim at the DIA on concurrent employment just to avoid of participating on the worker compensation benefits. The company purportedly signed a document stating that the plaintiff was fired on March 18, 1990, a week before the accident. This act could have caused the

plaintiff to be locked in a solitary hole for his constitutional right.

58.    The defendant stated under oath that he took 10 to 15 minutes in seeing the plaintiff on an examination which was supposed to take at least 45 minutes to an hour on the first time seeing. His opinion severely damaged the plaintiff's credibility and demeanor by making the whole DIA to believe in a false interpretation that the plaintiff was not disabled at the time of his examination. The single member even stated on her decision that the defendant was a credible doctor on the record but the defendant sent a Fax Request from his office stating that the cervical spine was not related to the accident on March 23, 1990 when the plaintiff brought the accident report from work along with other documents from his treating doctor to the defendant's office stating neck and back injuries.

59.    The plaintiff had a nerve irritating on his neck due to the result from the accident at work. He has a swollen on the left side of his shoulder visibly relating to his injury. He fell from a highly defective bench chair which caused him to hit his neck, back, rib and head on the boxes filling with boards and then landing on the floor.

60.    As described in paragraphs above, the defendant did not fully examine the plaintiff for LMIC fairly but provided a false information pursuant to the provision of chapter 152 section 14 at the time that the plaintiff's claim was at the DIA. The defendant mis-characterized of facts which caused harm to the plaintiff's claim at the DIA. He avoided to examine the cervical spine on July 17, 1990 but he did examine on April 14, 1992 and did not opine to it on the conclusion of his report for whatever reason that it may be. He again examined the cervical spine on January 7, 1998 by giving another story on the issue.

61.    As a result of the violations and described paragraphs mentioned above, the plaintiff is suffering a judgement from this court against the defendant with interest and penalty due to

the dishonesty and trust which caused the 1st and 2nd hearing judges to believe that he was not disabled at the time of his examination.

## COUNT IV
## NEGLIGENCE, MEDICAL DUTIES OWED BY THE DEFENDANT

62.     The Plaintiff repeats and re-alleges paragraph 1 to 61 of this complaint, comprehensively, and incorporates them by a reference as fully set forth below:

63.     In or about July 17, 1990 as well as April 14, 1992, the defendant performed a rushing examination by taking 10 to 15 minutes, as a matter of fact, which was approved under oath on September 1, 1992, as stated in paragraphs above that such examination was supposed to take at least an 1 hour on the first time seeing. Liberty Mutual Insurance Company paid the defendant in an hourly basis, as a matter of law, to examine the plaintiff for a report due to the evidence on the record.

64.     The defendant was legally and not properly examined the plaintiff. He had a duty to provide a fair or close to an accurate finding after finishing to examine the plaintiff but he exclusively rejected a true evidence from the industrial accident which caused the plaintiff to lose his claim at the DIA. He was not provided a fair and an independent judgements with his distinct profession to the plaintiff's injury during and after his examination.

65.     The defendant took 10 to 15 minutes during his examination and evaluation which supposed to be at least one hour on the first time seeing and confirmed under oath that he did take 10 to 15 in examining the plaintiff, as stated in paragraphs above, which constituted a willful and knowing violations from the medical examination under the Workers' Compensation Act where the plaintiff's disability would have been resolved by now, probably, had the physical

examination was not roughly performed. The plaintiff was mentioned the concern to his treating physician and submitted this particular piece of information to the hearing Judges and the Reviewing Boards due to the roughly examination by the defendant at the time.

66. An incorrect diagnosis could lead an injury to a long term disability in the same way that an incorrect examination would give an incorrect diagnosis for an incorrect treatment to destroy a life. The incorrect diagnosis from the defendant caused the DIA not treating the plaintiff with the law due to the true evidence on the record. The plaintiff suffers harm due to the falsifying information which was the proximate cause giving an inclination to his medical and financial depressions on the outcome of his claim at the DIA.

67. The defendant was properly informed by the plaintiff of the injuries sustained at work at the time of the accident. The defendant concealed the knowledge the plaintiff's injury due to whatever reason that it may be the defendant is entitled to receive the content of the law on its side for preventing the law at DIA from being fair during the actual treatment of the compensable injury. The violation of the statute by the defendant was liquidated in making the whole DIA to manifest an injustice in its court room.

68. The defendant's job was to perform an orthopedic examination and evaluation for LMIC before or after receiving the salary from the employer which constituted that the defendant was substantially employed as the plaintiff and supposed to be honest but its intentional acts caused an injury to the plaintiff's claim at the DIA.

69. As a result of the injustices describing above, the defendant caused the DIA not to issue justice to the plaintiff from the beginning of hearing until the end of his claim, the plaintiff suffers a Judgement against the defendant on the issue of vicarious, malfeasant, vicious liability with interest to date, plus future interest for performing a rushing examination as

stated in paragraphs above which caused the department to lose its credibility in a single claim before a lay citizen who did not do anything wrongly to anybody in his claim.

## COUNT V
## CLASS ACTION ALLEGATION ON THE MALFEASANCE

70.    There are several common questions relating to the facts and laws in this allegation against the defendant under the M.G.L.152, § 14 at the time that the plaintiff's claim was at the DIA by making the plaintiff to incorporate paragraph 1 through 69.

71.    The duties of the defendant was improper and inconsistent with the definition of the status of honesty. The defendant sent a lot of reports with different signatures to prevent the plaintiff from receiving the liability owed to him in his claim.

72.    By its conduct, as set forth herein, the defendant violated the provision of M.G.L.152, § 14 in faxing an intentional fax request to the DIA in absence of the plaintiff to discredit his demeanor and credibility by making the whole DIA to believe in this erroneous finding.

73.    The plaintiff went to see the defendant at the request of LMIC in the IME's office where the fax request had a letter head Ime, Inc., Independent Medical Examination. The defendant was under the control of the Ime, Inc., whom supposes to have control over the work that the defendant was performing. The independent judgment of the defendant is the appropriate degree of conduct from the Ime's office by sending the same report to the DIA with different signatures as stating by the law that anyone who accepts to sign a document in knowing the content of the document signed is responsible on the document which will serve as a legal document as here in this case.

74.    The defendant's report and the Fax Request had a letter head, The Independent Medical

Examiner, Ime, inc.,. The office prepared the report which was adopted by the DIA in stopping the plaintiff from receiving his benefits.

75.   The content on the fax request by the office of Ime, Inc., Independent Medical Examiner, revealed that the plaintiff had an injured to his back and head only. The defendant wrote that his last Ime indicated no disability; liability should be accepted for back only which was outrageous on part of the IME judge taking the matter of juridical duties on its hands by issuing justice from his office for the DIA in the plaintiff's claim.

76.   The defendant contributed on the negligent, intentional infliction, emotional distress due to its wrongful, illegal, discriminatory, unlawful actions done in mailing a false information to stop the plaintiff from receiving his right at the DIA by making the single member to believe on an erroneous fact that he was a credible doctor on the record.

77.   This deceptive practice, tortuous conduct by the defendant, caused the single member, the whole DIA, to believe in a wrong prediction, assumption, supposition, truculence like the year of 1932 in this country.

78.   The plaintiff prays this court honor to treat him his claim as a worker compensation case, to avoid criminal justice of entering, where he got an impression was a mistake of fact provided by the defendant in his claim. He is only looking his constitutional right.

79.   As the result from the malfeasance done, the plaintiff is reserving his right in all sets forth above that the Ime, Inc., had retained a control in part of work that the defendant was performed in its office. The defendant's tortuous, prejudicial, spurious conduct did cause harm to his claim at the DIA after the wilful concealment of relevant medical evidence just because the result of the X-rays reveal a finding due to the cause from the injury at work.

## COUNT VI
## DISCRIMINATION AND BREACH OF CONTRACT

80. The plaintiff hereby incorporates paragraph 1 through 79 above and re-alleges the allegations, the same, as stated therein pursuant to 19 U.S.C. 1673 on intentional violation under customs duties and 42 U.S.C.1988 under common law civil right and 28 U.S.C § 1447.

81. In this court, the plaintiff brings a separate cause of action against the defendant under to the Fed.R.Civ.P.23 who was discriminating against him visibly in his report and wrote an untruth statement to support his feeling, emotion, anger, report according to the action done by him on the FAX Request which proves that the defendant was discriminating against him due to his color, race, age, sex, status, ethnicity, etc., in the worker compensation case. His finding proves the rest of his concerns in his reports and depositions.

82. The worker compensation claim was not over yet where the plaintiff was not able to file a discrimination complaint against the defendant early on the discriminatory act done by its office. Its independent, contracting action caused harm to the plaintiff's right at the DIA with its practice. It was constructively stating a lot of irrelevant issues which relates to discrimination on its report in connection with 28 U.S.C. § 1445, 92.

83. During the process, the defendant violated the contract made with the plaintiff and acting improperly on the record which had caused the plaintiff to have an injury on depression, sadness, etc. and probably not to be over by now.

84. The defendant had a contract made with the plaintiff on July 17, 1990, April 14, 1992 and January 7, 1998 who was examined by the defendant whom breached all contracts.

85. The Fax Request from the defendant's office is a clear indication that the defendant was discriminating against the plaintiff by mis-leading and categorizing facts, giving wrong

names, describing wrong aspects, performing and acting improperly on his reports.

86.    According to the Fed.R.Civ.P.23, the plaintiff brings this claim against the defendant under the Massachusetts Law as an exempt from the provision of M.G.L.c.152, § 14 at the time that this claim was under the DIA for making him to have a low self-esteem in his life.

87.    As a result of the described breaches of contract illustrates above, the plaintiff is suffering a Judgement against the defendant with interest to date, plus interest for producing a wrong judgement of opinion to the DIA against him.

## COUNT VII
## DEPRESSION SUFFERED DUE TO THE INJUSTICE DONE

88.    The plaintiff repeats and re-alleges paragraph 1 to 87 of this complaint, comprehensively, and incorporates them by a reference as fully set forth below:

89.    During the course of suffering, the plaintiff was accepting to a chiropractor school to remove himself from the depression that he suffered. He owed some money to Northeastern University where he could not receive his transcript. He did not get a chance to see as to whether he could have made it through or not. He was not able to participate in the vocational program at the time. He again tried to go to Northeastern University Law School. He could not receive the help needed to move on to the next step of treatment due to the act done by each party involved.

90.    The plaintiff still suffers from depression after seeing that he did not do anything wrongly to anybody in his claim where he is the one paying the consequence of the wrongdoer by other parties in his claim which was and still not an easy duty. He has been staying at home like a loner and loser by suffering in financial depression when he used to make it very well

in life. His body could not function properly before but he wakes up from great harm, depression and frustration done to him where he could not receive the treatment needed to go to school.

91.    There was psychiatrists, psychologists and his physicians found him to have psychological disability. Lately, he has been accused in almost everywhere he seems to go just because he is looking for his constitutional right.

92.    He had to do odd things against his will to survive in taking buses, walking long distance sometimes, going to the market by bus, carrying heavy, light weight of begs in his hands, being unhappy and unable to have in order to survive to support himself which is not easy due to the injustice received in his claim.

93.    He used to take a lot of heavy drugs before in order to feel better and follow sleep. It was a nightmare to see himself in this situation that he had tried on many occasions to remove himself from depression by contacting the vocational rehabilitation where he did not have to achieve of what he wants to do. He could not go out to find a companionship due to his financial situation.

94.    Most of his friends have been in high paying job where he could have been like them since he love politics but the action done by the defendant, its examiner, each member, the employer caused his claim not to reach a resolution at the DIA when he was not the one deceiving and misleading the DIA. He has been suffering and still can not receive justice due to the wrongdoings by other party in his claim.

95.    Due to the injustices stated above, the plaintiff has been receiving a lot of spiritual treatments from the Lord to prevent him from having a stroke nor committing any wrong thing in his life which is not an easy duty after of what he went through with stress and anxiety. He used

to have high expectation and now he sees himself in a homeless situation when he was working very hard to start a business in helping people in this country.

96.    His high blood pressure was elevating from time to times to 148 by 122 +; 140 by 110, 90 + due to the injustice done to him in his claim. He could have died during this process but he is able to maintain it lately with 2 to 3 different blood pressure medications.

97.    As a result of the facts stating above, the plaintiff was extremely depressed until God removes him to some instants by putting him in a mission to achieve for the world which has been helping him in almost every day to keep him of going after the discontinuance of benefits where he is claiming his right in this issue in order for him to return the favor back to all spirits involved by another form in life.

## COUNT VIII
## DISTURBING THE WELL BEING

98.    The plaintiff repeats and re-alleges paragraph 1 to 97 of this complaint, comprehensively, and incorporates them by a reference as fully set forth below:

99.    The plaintiff is an individual who believes in all religious under the direction of, and represents, the intern father, Jesus Christ, his soul, his spirit, holly ghost, holly spirit and Amen for the best interest of his health. It would be proper for the doctrine of the law to create an exception here with its normal ruling of practice for this example to carry on in the history book that his intern life was suffering while he is suffering due to the injustice done to him by the defendant on the record.

100.   As a nation under the constitution, the early injustice caused harm to his status in both economic and physical conditions where he is claiming his right on all issues expressing

under this court for each party representing here.

101. The plaintiff is only looking to have a peaceful agreement with the party which had done wrongly to him in his claim. It was due to this accident that he was receiving social security disability. The office of medicare deserves to get reimbursed on the services provided to him since it was not the one causing his claim to rise on benefits without reaching to a settlement. The first member allowed both parties to reach a settlement after the case being accepted at the DIA. The the report from the defendant, its office and others were the one convincing the judge that the plaintiff was not disabled at the time of his examination.

102. By the virtue of this discrimination on the action, injustice, harm done to the plaintiff in his claim, it's only God who could remove a Shepard's case from the location of un-justification to justification. The defendant was against the plaintiff in his claim with a strong reason to lie for whatever reason it may be.

103. The plaintiff is claiming his right under the discriminatory practices with the meaning of the Civil Right Act 42 U.S.C. § 1981 and the Fourteenth Amendment for injunctive relief that he lets the law to decide on the matter.

104. His spirit and soul were affecting where he has to receive a lot of spiritual and inspirational blessings from the church of our Lady of Pity and Lady of Perpetual under the direction of a father to prevent him from being a cadaver in life.

105. The holly ghost has been upsetting by making to have a lot of scary dreams from times to times in the dark side of life due to the outcome of this case where he has a restriction preventing him from going to the next step to serve his nation for All on this earth.

106. The plaintiff is only asking this court to create a new substantive liability for his spirit, soul and holly ghost demanding justice for all victims involved in his allegations. The social

security provided benefits and treatments to him. His medical and hospitals bills did not fully pay yet due to the defendant. He has to pay all spirits who helped him early in his life.

107. The DIA did not fully exercise its discretion to allow him of receiving his constitutional right which was violating by the defendant who misled and deceived its own department directly without the involvement of any party in this claim.

108. His mind was not fully setting in what to do since he was not a lawyer where he has to call a firm in asking an attorney on how and what to do for filing a claim in this court.

109. The plaintiff is only asking this court to create a new substantive liability for his spirit, soul, the intern father, the intern son, holly ghost and Amen whom demand justice for all victims involved in his allegations.

110. The social security provided benefits and treatments to him. His medical and hospitals bills did not fully finish to pay yet. He has to return the favor back by the spiritual lawyer, judge, doctor, politician, president, leader, anchor who helped in the dark side to bring this case to an exception quietly without lighting a light in our land.

111. As a result of the disturbance, the Lord wants the plaintiff to be honest and tell the truth in every question asked by any party in his claim where he is claiming his right in the new interpretation, exempt of the law which will be into application under this court due to the wrongdoing by the defendant in his claim at the DIA.

## COUNT IX
## SOCIAL SECURITY DISABILITY

112. The plaintiff repeats and re-alleges paragraphs 1 to 111 above pursuant to U.S.C.42 §§ 301 & seq; 401 et seq; 1301 et seq and for medicare treatment U.S.C.48 § 1382i of this

complaint, comprehensively, and incorporates them by a reference as fully set forth below:

113.  During the year of 1991, he had a lot of scientific tests done such as MRI, X-rays and EMG at before the discontinuance of benefits. He also had a test done on a computerized strength from a machine where the results of the tests revealed chronic fatigue syndrome, denervation, bulging disc which can be a severe impairment depending on each person in life. He was hospitalized one time by the request of his doctor to receive treatments. He had several tests done at the hospital when he was feeling and having a severe migraine early. He used to have a strong pain in his rib which seems to go away but it comes back from time to times.

114.  The plaintiff started to receive social security disability benefits after five years of treatments with periodic reviews by the office due to the accident at work on March 23, 1990.

115.  As a result of facts stating above, the plaintiff is claiming his right in this reckless acts done by the defendant, its office causing his claim to be of where it is right now on concurrent employment without justice at the DIA.

## COUNT X
## VOCATIONAL REHABILITATION

116.  The plaintiff repeats and re-alleges the paragraph 1 to 115 above pursuant to U.S.C.29 § 762 and 764 of this complaint, generally and incorporates them by a reference as fully set forth below for vocational rehabilitation:

117.  A long term disability does not mean that he could not be trained nor entitled to retrain himself and participate in a rehabilitation course. He had tried on several occasions to see as to whether he could return to his normal activity. He was accepting to participate in a vocational rehabilitation due to the findings from his treating doctors, psychiatrist,

independent doctors that he does not even see in a regular basis along with the findings from the psychologist of the social security disability office. They all substantiated his disability but other parties did want him to progress.

118.  The plaintiff wants to retain himself to see as to whether he could return back to the labor market again. He is praying this court honor in this issue since it was the early injustice done making him to be in the situation that he happens to be now on injustice.

119.  Due to the injustices done by the 2nd employer and the defendant, its examiner on the false facts submitting to the DIA, the plaintiff lost his right. These shifty, unlawful, dishonest, unjustified evidences made the whole DIA to look as a court of injustice which likes to manifest injustice to innocent victims in a case. He was in heavy depressive medication and was not able to represent himself at the time of the 1st injustice issuing.

120.  The plaintiff complied with the law in proving the injustice done to the DIA, the Appeals Court and Further Appellate Review. He pays the law of this court to appear in his claim since there is always a superior court as here to review the appellate court opinion due to an early injustice done to a victim in case. He had a back problem and neck problems along with other issues relating to his injury. He did perform some odd things before with precaution to prevent it from irritating when he did not have anybody to do them for him such as painting, mapping, sweeping, carrying his belongings.

121.  As the result above for rehabilitation, the plaintiff did make a lot of great efforts to receive the program course but he did not receive it due to the falsifying fact provided by the defendant to the DIA where he can not proceed on the gift delivering to him now by the Lord. He was unable to perform due to the early misleading conduct involved in his claim. The Lord is helping him to prove the deceitful, actionable violation by the defendant. He files

this complaint in asking the law to allow of receiving the course of treatment in this field.

## COUNT XI
## SEEKING THE AUTHORITY OF THE LAW

122. The plaintiff repeats and re-alleges paragraph 1 to 121 of this complaint, comprehensively, and incorporates them by a reference as fully set forth below:

123. These serious and willful misconducts by the defendant constituted a serious evidence under the provision of M.G.L.c.152 section 14 and 28 at the DIA for being unfair, dishonest, against the plaintiff in his claim. And moreover, by deceiving the single member, the whole DIA with a wrong fact for his own personal gain.

124. Having exhausted the administrative procedures at the state level, the plaintiff asks the law permission here to bring his civil allegation into this court where he asks this court to treat it in civil litigation only.

125. This prima facie evidence only asks this court permission for due process of law to appear in this claim due to the extreme and outrageous conducts from the defendant which brought the plaintiff on emotional distress by its intentional infliction.

126. The willful violation done by the defendant come to an evidence of fact under the common law affecting a worker compensation recipient from receiving his constitutional right where this fact is a genuine material under the common legal question of law asking this court as here for a fair and efficient justification, adjudication in this claim.

127. As the result of the authority of this court, the plaintiff prays this court, justice honor for justice under the law that he was not the one misleading, deceiving the DIA for personal gain where his claim has nothing to do with the concern of the law wanting to lock him in a safe place for telling the truth on injustice done to him early in his claim.

## PROSE ATTORNEY'S FEE

128.   The plaintiff repeats and re-alleges paragraph 1 to 127 of this complaint, comprehensively, and incorporates them with all counts by a reference as fully sets forth herein.

129.   The defendant, each party's action constitute an illegal, unlawful, prejudicial acts done under each count above.

130.   By the application of each statute of law stating above, the plaintiff is entitled to receive a reasonable prose attorney's fee and costs of action pursuant to section 502 (g) (1) of each statue involved in this claim specifically under 28 U.S.C.§ 1445, M.G.L.c.152, 13 due to the hard work putting and done at the DIA, Appeals Court, Further Appellate Review and this court to receive justice, his constitutional right and benefits at the DIA that most parties want to stop from receiving justice and its basic right.


WHEREFORE, the plaintiff demands judgment against the defendant for the early damages done and such other relieves as it deems and appropriate by this court to :

A)   declare all counts of this action as a collective action pursuant to 29 U.S.C. § 216 (b) and return the case back to the Supreme, the Appeals Court, the DIA or its proper avenue due to the deceitful report made by the defendant violating his constitutional right;

B)   declare that the defendant failed the due diligence by misleading and deceiving the DIA for personal gain;

C)   make an informed decision on the defendant's early wrongdoing causing the plaintiff not to receive justice on the 1st time filing at the DIA;

D)   determine the damages done by the defendant causing the whole DIA to believe in misleading, erroneous facts;

E)   bring all counts into this court to prevent the early injustice from repeating itself in the near future at the DIA;

F)   analyze the truth that the defendant was hiring to perform a duty which was delivered to the

defendant whom submitted a wrong fact to the court;

G)    allow the plaintiff to recover under each serious and willful misconducts done by the defendant misleading and deceiving the DIA for personal gain under the G.L.c.152, §§ 28 and G.L.c.93A,§§ §§ 9 and 11;

H)    see that he was not the one who made his claim to rise on constitutional benefits without lump sum settlement of agreement;

I)    teach that the defendant went behind the plaintiff in producing a falsifying fact to the department of industrial accidents;

J)    determine the damages done by the defendant which causes the whole DIA to believe in a wrong assumption in order to avoid of participating in the worker compensation benefits;

K)    prevent any disturbance after the decision from stopping the plaintiff from receiving his constitutional right since the defendant's action was unconstitutional on the record;

L)    determine the damages sustained by the plaintiff from the defendant pursuant to M.G.L.c.152, 28 in violation of M.G.L.c.152, 14 to benefit its own party on the record;

M)    award those damages in favor of the plaintiff, in consequence of the wrongful conduct stating in this complaint, for such pre-judgement interest as required;

N)    prevent any hearsay evidence from bringing this claim to a beginning in square one again as it was since all evidences were already accepted into an account in this claim;

O)    acknowledge that a great, fair, brave, impartial heart like this court will not remove the plaintiff from the battle with the defendant to take over in order to put him in a safe place for what he did not do purposely to the DIA in his claim but it will issue justice due to the evidence on the record;

P)    grant plaintiff further relief as may deem just and proper;

Q)    allow the plaintiff to say pray the Lord with the trumpet of happiness that justice finally serves in this claim by a fair, brave, impartial court as here, as a representative of the lord, located in the state of Massachusetts of this country.

Mr. Gerard D. Grandoit,
Submitted by its prose,
Gerard D. Grandoit, Prose
P. O. Box 400547
Cambridge, Mass. 02140
Telephone # (617) 354-7406